UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOBBY CURRY, | |
| Plaintiff, | No. 22 C 757 |
| v. | Judge Thomas M. Durkin |
| PEDRO GUZMAN, H.A. MOHAMMAD, and M.P. DOUGHERTY, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Bobby Curry brings this suit pursuant to 42 U.S.C. § 1983 and state law, alleging that Chicago police detective Pedro Guzman and officers H.A. Mohammad and M.P. Dougherty violated his civil rights in connection with his out-of-state arrest for aggravated domestic battery. Defendants move to dismiss Curry's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). R. 75. For the following reasons, that motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual

1

allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Viola Jones called the Chicago Police Department ("CPD") on February 5, 2020 to report a domestic battery by Curry. R. 68 ¶ 1. Two days later, she filed a misdemeanor complaint against Curry, and a judge issued a warrant for Curry's arrest that day. *Id.* ¶¶ 2–4. On February 8, 2020, CPD Detective Pedro Guzman was assigned to investigate and learned that Curry had been arrested by police in Florida for being in possession of Jones' vehicle, which had been reported stolen. *Id.* ¶¶ 5, 6. That day, Guzman interviewed Jones. *Id.* at p. 37. Jones told him how Curry had choked her at multiple locations on February 5th and that she had obtained a misdemeanor warrant and related order of protection. *Id.* Guzman also interviewed a neighbor who observed Jones' red face and swollen jaw around February 5th or 6th and asked an evidence technician to photograph Jones' visible injuries. *Id.* pp. 37–38.

On February 9, 2020, an Assistant State's Attorney ("ASA") interviewed Jones, with Guzman present, and approved one felony count of aggravated battery by strangulation against Curry. *Id.* ¶¶ 14–15. Curry refers to the video recording of this interview in his complaint. *Id.* The next day, Guzman prepared a felony complaint on Jones' behalf, which Jones purportedly refused to sign. *Id.* ¶¶ 20, 24. The copy of the felony complaint and arrest warrant attached to Curry's pleading appear to contain Judge Peggy Chiampas' signature. *Id.* at p. 43, 60, 62. Curry claims that Guzman forged those signatures and never presented the complaint to the court. *Id.* ¶¶ 19, 35.

After being released at some point in the intervening period, Curry was again arrested by police in Florida on February 13 or 14, 2020 on the outstanding felony warrant. *Id.* at ¶¶ 37–38. Guzman and another officer traveled to Florida to extradite Curry back to Chicago on March 3, 2020. *Id.* at ¶¶ 48–49. While Curry does not specifically describe CPD Officers Mohammad and Dougherty's roles in his arrest, the arrest report attached to his complaint indicates that Mohammad was an arresting officer and Dougherty was the watch commander who approved probable cause and made the final approval of charges in the early hours of March 4, 2020. *Id.* at pp. 77, 79.

Curry's complaint includes five claims: Fourth Amendment and civil conspiracy claims under § 1983, malicious prosecution and intentional infliction of emotional distress ("IIED") under Illinois law, and "police misconduct."[1]

---

[1] Curry brings his IIED claim against Guzman only. All other claims are brought against all three Defendants.

3

**Discussion**

I.  Fourth Amendment

Curry brings a Fourth Amendment claim for false arrest. His main grievance is that he was arrested in Florida and extradited to Chicago based on a fraudulent warrant. In Curry's telling, which the Court accepts as true, Guzman signed the felony complaint in his own name on behalf of Jones, never presented that complaint to the court, and forged Judge Chiampas' signature on the complaint and the warrant. And Mohammad and Dougherty knew the warrant was illegitimate because they knew that Judge Chiampas worked at a different location than was listed on the arrest report.[2]

The problem for Curry is that probable cause is a complete defense to a §1983 claim for false arrest. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017). So long as Defendants had probable cause to believe that he had committed a crime, he does not have a viable Fourth Amendment claim against them, even if the arrest was made pursuant to an invalid warrant. *Taylor v. Henson*, 61 F.3d 906, 906 (7th Cir. 1995).

Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013) (citation

---

[2] Defendants argue that Curry failed to adequately plead Dougherty and Mohammad's personal involvement in the alleged misconduct. The Court disagrees. Curry alleges that Mohammad and Dougherty participated in his purportedly illegal arrest on March 4, 2020 because they "fabricat[ed]" Jones's injuries in the arrest report. *See, e.g.*, R. 68 at ¶¶ 56, 58.

4

omitted). Due to the factual nature of the inquiry, courts often hold that probable cause determinations in § 1983 cases are inappropriate at the motion to dismiss stage. *See Neita v. City of Chi.*, No. 19 C 595, 2019 WL 5682838, at *3 (N.D. Ill. Nov. 1, 2019) (collecting cases). Yet it is possible for a plaintiff to "plead himself out of court" in such a case by failing to adequately allege a lack of probable cause. *Hudson v. Gaines*, No. 20 C 5663, 2022 WL 4272781, at *3 (N.D. Ill. Sept. 15, 2022). Defendants argue that Curry does so in this case by including in his pleading evidence that shows they had probable cause to arrest him.

In considering a motion to dismiss, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim" including "exhibits attached to the complaint or documents referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Here, the exhibits attached to and directly referenced in Curry's complaint undermine his allegation that Defendants did not have probable cause to arrest him for aggravated domestic battery. *See* 720 ILCS 5/12-3.3 (a-5) ("A person who, in committing a domestic battery, strangles another individual commits aggravated domestic battery. . . . 'strangle' means intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual.").

As to Guzman, Curry attaches an investigative supplement, which describes how Guzman visited Jones' residence on February 8, 2020. R. 68 at 37. During that conversation, Jones told Guzman that while she and Curry were sitting in her car

5

around 6802 S. Stony Island on February 5th, he grabbed her by her throat and choked her, only stopping after she coughed up blood. She also shared that later, while stationary around 75th Street and State Street, Curry grabbed her by her neck again, making it difficult for her to breathe. *Id.* Jones additionally told Guzman that she obtained an order of protection and that a misdemeanor warrant had issued. *Id.* The supplement further states that Guzman spoke with Jones' neighbor, who reported she observed Jones with a red face and swollen jaw around February 5th or 6th. *Id.* Curry's complaint also cites the video recording of the February 9th interview of Jones, which Guzman attended, which shows Jones describing how Curry choked her on February 5th. *See* R. 75-1.

As to Mohammad and Dougherty, Curry attaches the arrest report from March 4, 2020, which details the facts allegedly known to them when they were processing Curry's arrest. The report states that during a verbal "altercation" on February 5, 2020, Curry "on multiple occasions . . . gripped [Jones'] throat" and caused her "to have difficult[y] breathing." R. 68 at p. 77. It also notes that Curry's actions "caused scratches and swelling to [Jones'] neck and face." *Id.* The report further states that Curry had an order of protection against him, and the State's Attorney's Office had approved a felony charge of aggravated domestic battery. *Id.* at p. 75.

With these facts in hand, an officer in each of Defendants' shoes had reason to believe Curry strangled Jones. After all, a "reasonably credible" complaint of a single witness or victim alone generally is sufficient to establish probable cause. *See Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000). Curry does not contend that

6

Jones did not make these statements to Guzman, or that Mohammad and Dougherty were unaware of Jones' report of what happened. Instead, he attacks Jones' credibility in two ways.

First, he claims—for the first time in his response brief—that Jones was under the influence of drugs during her interview with the ASA and Guzman on February 9, 2020. Curry's complaint does not include any allegations about Jones being impaired during her interview. To the contrary, in the recording of the interview incorporated by reference into the complaint, Jones is seen stating that she was not under the influence of any drugs or alcohol. R. 75-1 at 36:54–57. A plaintiff may not amend his complaint through attachments to his opposition brief unless the new allegations are "elaborations" consistent with his pleading. *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *see also Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Here, the bald assertion that Jones was "higher than an astronaut" during the interview (R. 82 at ¶ 9) is not an elaboration, it is a brand-new factual allegation.

Even if Curry had properly alleged that Jones was under the influence of drugs during the interview, it would not render his claim that Defendants lacked probable cause a plausible one. As to Mohammad and Dougherty, they were not present during the interview and there is no indication that they had access or viewed the recording before processing Curry. So, as alleged, they knew about Jones' report of Curry strangling her, the order of protection she obtained against him, and the ASA's approval of an aggravated domestic battery charge. As to Guzman, Jones first told

7

him on February 8th about how Curry choked her, which was the day before the recorded interview on February 9th. As such, the facts allegedly known to Defendants would still have warranted a reasonable officer to believe that Curry committed aggravated domestic battery. *Cf. Calderon v. Vill. of Bridgeview*, No. 18 C 8277, 2020 WL 1139252, at *2–3 (N.D. Ill. Mar. 9, 2020) (granting a motion to dismiss a § 1983 false arrest claim where the plaintiff had pled himself out of court by alleging that the officer had relied on two eyewitness accounts and did not "plausibly allege that [the officer] should have doubted those firsthand accounts").

Second, Curry argues that Jones did not have any injuries. That assertion derives from his reading of the arrest report dated March 4, 2020. *See* R. 68 at ¶¶ 52, 56–58. On one page, next to Jones' name, it reads, "Injured? No[;] Deceased? No[;] Hospitalized? No[.]" *Id.* at p. 76. On the next page, the narrative section states, in part, that Curry "caused scratches and swelling to complainant Viola Jones['] neck and face." *Id.* at p. 77. In Curry's view, the first statement is the truth, and the second is a lie. But that is not the only mention of Jones' injuries in the materials Curry incorporates into his complaint. *See, e.g.*, R. 68 at pp. 25 (responding officer reporting visible scratches on Jones' nose and lip), 33 (reporting minor injuries), 36 (noting photos taken three days after the incident show injuries to her face and neck), 37 (eyewitness who saw Jones shortly after the altercation reported seeing Jones' red face and swollen jaw); R. 75-1 (recording of interview where Jones tells ASA and Guzman she suffered injuries). In view of all of these materials, Curry's assertions that Defendants knew Jones had not suffered injuries—and that they fabricated

8

evidence of injuries—are implausible. *Cf. Bogie*, 705 F.3d at 609 ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.")

But even if Curry had adequately alleged that Jones had no visible signs of injury, the other facts allegedly known to Defendants were sufficient to warrant a reasonable officer to believe Curry strangled Jones. As previously discussed, the facts available to Guzman included Jones' two specific and generally consistent reports that Curry choked her, and the facts available to Mohammad and Dougherty included Jones' report that Curry had choked her, Jones' order of protection against Curry, and the ASA's approval of a felony charge of aggravated domestic battery. With those facts incorporated into his complaint, Curry has not plausibly alleged that Defendants lacked probable cause to arrest him. His Fourth Amendment claim is dismissed.

II. Conspiracy

Without an underlying constitutional injury, Curry's conspiracy claim fails. *Ewell*, 853 F.3d at 918. However, even if Curry had stated a plausible Fourth Amendment claim, his allegations would still be insufficient to state a claim for civil conspiracy under § 1983.

To state a claim of conspiracy, a plaintiff "must allege facts from which the Court may reasonably infer there was '(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the

9

agreement.'" *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 880 (N.D. Ill. 2019) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). There must be some "factual allegations suggesting that the defendants agreed to violate" a plaintiff's constitutional rights. *Eason v. Raoul*, No. 22-cv-3166, 2023 WL 6174415, at *1 (7th Cir. Sept. 22, 2023). And here, Curry's complaint is bereft of any facts about any agreement among the defendants. There are no specific allegations about what role Mohammad and Dougherty played in his arrest beyond signing off on an arrest report, or any interaction they had with each other or Guzman. At most, Curry alleges that each Defendant knew the arrest warrant was invalid. Common knowledge is different than reaching an agreement to violate his rights. *See Mary Jane Sweet Spot, LLC v. City of Blue Island*, No. 1:22-CV-06273, 2024 WL 1363635, at *12 (N.D. Ill. Mar. 29, 2024) (dismissing conspiracy claim where plaintiff failed to plausibly allege any facts to support the alleged "meeting of the minds"). Accordingly, Curry's conspiracy claim is dismissed.

  III. State-Law Malicious Prosecution

To establish a claim for malicious prosecution under Illinois law, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Esco v. City of Chicago*, 107 F.4th 673, 683 (7th Cir. 2024) (citation omitted). As with a Fourth Amendment claim, probable cause is an absolute defense to an Illinois malicious prosecution claim.

*Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). Therefore, the Court's conclusion that Curry's complaint shows there was probable cause to detain him for aggravated domestic battery "eviscerates any claim of malicious prosecution." *Esco*, 107 F.4th at 683 (affirming dismissal of malicious prosecution claim where body-worn camera footage that was incorporated into a complaint showed that officers had probable cause to believe plaintiff committed a crime). Curry's malicious prosecution claim is dismissed.

IV. IIED

To establish an IIED claim under Illinois law, a plaintiff must show "that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill.2d 263 (2003)). Guzman challenges only the first element, arguing that his conduct could not have been extreme or outrageous because the complaint shows he had probable cause to arrest Curry. But Defendants disregard the allegations that Guzman never presented the felony complaint to the court and instead forged Judge Chiampas' signature. That conduct, if true, goes "beyond all possible bounds of decency" and is "intolerable in a civilized society." *Feltmeier*, 207 Ill. 2d at 270.

Guzman contends that Curry has waived any opposition to dismissing the IIED claim by failing to address Guzman's arguments in responding to the motion to

11

dismiss. But "district courts cannot rely solely on the plaintiff's lack of response as the reason to grant a motion to dismiss." *Swafford v. Jordan*, No. 21-3189, 2022 WL 2829762, at *2 (7th Cir. July 20, 2022). That is especially true where, as here, the plaintiff is a *pro se* litigant. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("[I]t is incumbent on [the Court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds."). Further, while Curry does not specifically mention his IIED claim in his response, he discusses Guzman's alleged misconduct in forging a warrant. *See* R. 82 ¶¶ 6, 14, 17.

The Court is highly skeptical that Curry will be able to prove the fraud he alleges.[3] But because the Court must take the allegation of forgery as true at this stage, Curry's IIED claim stands.

V.   Police Misconduct

Defendants lastly seek to dismiss Curry's police misconduct claim. The claim, as pled, is unclear. In addition to asserting he was knowingly arrested without probable cause by all three Defendants, Curry cites Guzman's prior internal affairs complaints, CPD's consent decree, and violations of unnamed policies and procedures. R. 68 at p. 20. To the extent that Curry is reiterating his Fourth Amendment claim, he has pled himself out of court for the reasons discussed above. To the extent that Curry is seeking to assert a different claim, his complaint does not provide fair notice

---

[3] If in fact Guzman forged Judge Chiampas' signature, that is criminal conduct. But if untrue, that allegation is potentially sanctionable.

12

of that claim and the basis for it. *Twombly*, 550 U.S. at 555. Therefore, the police misconduct claim is dismissed.[4]

VI.  Dismissal with Prejudice

Presently before the Court is Curry's second amended complaint. "District courts have broad discretion to deny leave to amend the pleadings where the amendment would be futile." *Esco*, 107 F.4th at 683. Because Curry's most recent complaint shows there was probable cause to detain him for aggravated domestic battery, any amendment as to Curry's Fourth Amendment, conspiracy, malicious prosecution, and police misconduct claims would be futile. Therefore, the Court dismisses those claims with prejudice.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Fourth Amendment, conspiracy, malicious prosecution, and police misconduct claims (Counts II through V) are dismissed with prejudice. The IIED claim against Guzman will proceed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 3, 2024

---

[4] Defendants separately argue that they are entitled to qualified immunity on Curry's Fourth Amendment, conspiracy, and police misconduct claims. Because the Court dismisses those claims for failure to state a claim, the Court does not reach the question of whether Defendants are entitled to qualified immunity.

13