UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOBBY CURRY,

      Plaintiff,

      v.

PEDRO GUZMAN,

      Defendant.

No. 22 C 757

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Curry alleges that Chicago Police Detective Guzman intentionally inflicted emotional distress against him by improperly procuring a warrant for his arrest. Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). R. 183. For the following reasons, that motion is granted.

## Legal Standard

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings 'include the complaint, the answer, and any written instruments attached as exhibits.'" *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (citation omitted). "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Id.* at 313. Therefore, the complaint must "'state a claim to relief that is plausible on its face,'" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

1

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

On February 8, 2020, Viola Jones reported to the Chicago Police Department that Curry battered her. R. 68 ¶ 1. Two days later, she filed a misdemeanor complaint against him, and a judge issued a warrant for Curry's arrest that day. *Id.* ¶¶ 2–4. On February 8, 2020, CPD Detective Guzman was assigned to investigate and learned that Curry had been arrested by police in Florida for being in possession of Jones' vehicle, which had been reported stolen. *Id.* ¶¶ 5, 6. That day, Guzman interviewed Jones, who told him how Curry had choked her while inside her vehicle at multiple locations on February 5th before driving off with her vehicle and that she had obtained a misdemeanor warrant and related order of protection. *Id.* at p. 36–37. Guzman also interviewed a neighbor who observed Jones' red face and swollen jaw around February 5th or 6th and asked an evidence technician to photograph Jones' visible injuries. *Id.* pp. 37–38.

On February 9, 2020, an Assistant State's Attorney interviewed Jones, with Guzman present, and approved one felony count of aggravated battery by strangulation against Curry. *Id.* ¶¶ 14–15. The next day, on February 10, 2020, Judge Laura Bertucci-Smith granted the State Attorney's motion to quash the misdemeanor warrant; Guzman prepared and signed a felony complaint on Jones' behalf, which Jones purportedly refused to sign; and Judge Peggy Chiampas signed the felony

complaint and arrest warrant. *Id.* ¶¶ 17–24, pp. 43–45, 60, 62. After being released at some point in the intervening period, Curry was again arrested by police in Florida on February 13 or 14, 2020 on the outstanding felony warrant. *Id.* at ¶¶ 37–38. On March 3, 2020, Guzman and another officer traveled to Florida to extradite Curry back to Chicago. *Id.* at ¶¶ 48–49. Curry was indicted on six counts: criminal trespass to vehicles, robbery, unlawful restraint, domestic battery, and two counts of aggravated domestic battery with strangulation. R. 183-1 (*People v. Bobby Curry*, Case No. 20CR0477401 docket). On October 1, 2020, Curry began representing himself *pro se*, received the discovery in his criminal case, and discovered Guzman's alleged conduct. R. 68 ¶¶ 69, 70. He pleaded guilty to criminal trespass to vehicles on December 1, 2021. R. 183-1 (*People v. Bobby Curry*, Case No. 20CR0477401 docket). Charges for the other offenses were dismissed *nolle prosequi* on the same day. *Id.*

Curry filed this suit on February 8, 2022 against Guzman and two other Chicago Police officers. The Court granted in part and denied in part Defendants' motions to dismiss, dismissing with prejudice the Fourth Amendment, conspiracy, malicious prosecution, and "police misconduct" claims, and allowing the intentional infliction of emotional distress ("IIED") claim against Guzman to proceed. R. 93. In support of the IIED claim, Curry alleged that Guzman forged Judges Bertucci-Smith and Chiampas' signatures. Guzman moved for summary judgment on that forgery-based claim, which the Court denied without prejudice. R. 172. Though Curry conceded his allegation of forgery was untrue, his complaint also alleged that Guzman engaged in extreme and outrageous conduct in procuring the judges' signatures,

3

namely (1) signing the felony complaint on Jones' behalf; (2) seeking to quash the misdemeanor warrant without Jones' consent; (3) directly approaching Judge Chiampas for a warrant instead of waiting for case assignment; (4) meeting with Judge Chiampas without a court reporter; and (5) presenting certain materials to Judge Chiampas. *Id.* The Court thereafter permitted Guzman to file a motion for judgment on the pleadings based on those allegations. R. 174, 177.

## Discussion

Guzman seeks dismissal of Curry's remaining IIED claim as barred by the statute of limitations and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) and based on a failure to plausibly allege extreme or outrageous conduct or an intention to cause severe emotional distress.

I.      Statute of Limitations

A plaintiff need not anticipate or plead around affirmative defenses like the statute of limitations. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Because affirmative defenses "frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Id.* (cleaned up). Put differently, a plaintiff "must affirmatively plead himself out of court." *Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Curry's IIED claim is subject to a one-year statute of limitations. *See* 745 ILCS 10/8–101(a) ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one

4

year from the date that the injury was received or the cause of action accrued."); *see, e.g., Smith v. City of Harvey*, No. 24 CV 03611, 2025 WL 3228933, at *6 (N.D. Ill. Nov. 19, 2025) (applying one-year statute of limitations to IIED claim against detectives arising out of plaintiff's arrest and prosecution). The limitations period for an IIED claim "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 284 (2003) (explaining that "a continuing tort does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes").

Here, Curry's IIED claim focuses on Guzman's role in procuring an order quashing the misdemeanor warrant, the felony complaint, and the felony arrest warrant. As alleged, all of the relevant acts occurred on or before February 10, 2020, which was the day that Judge Bertucci-Smith heard and granted the motion to quash the misdemeanor warrant. February 10 was also the day Judge Chiampas entered the felony complaint where Guzman signed "on behalf of" Jones and the felony arrest warrant. R. 68 at pp. 43–45, 60, 62. Because Curry did not file his suit until February 8, *2022*—nearly two years after the conduct at issue and nearly one year after the limitations period expired—his claim is time barred.

Even if Curry's claim began accruing on the day he was allegedly arrested by CPD, March 3, 2020, it would still be untimely. The Seventh Circuit instructs that an IIED claim "in the course of an arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Moreover, although

5

courts in this district have recognized the possibility that a new IIED claim could arise "based on events after an initial injury where there is an allegation that the defendants acted with a freshly formed intention to cause emotional distress," *e.g.*, *Smith*, 2025 WL 3228933, at *6 (cleaned up), there is no such allegation here. And even if Curry's claim was equitably tolled until October 1, 2020, the day he became aware of the alleged conduct supporting it, the claim would still be untimely.

Curry argues that his claim should be equitably tolled based on the continuing wrong doctrine. He cites the "fraudulent concealment" of "the victim's death, the altered court file, and the exculpatory video," along with "interrogatory evasions" and the "submission of dual forged complaints."[1] R. 203 at p. 4. He also claims that because there is no form CPD-31.219 in his arrest records, his seizure remains ongoing, and the defect has not yet been cured. *Id.* at 6. Notwithstanding Curry's attempt to revive his dismissed false arrest and malicious prosecution claims and expand the current scope of his case, the remaining claim is not that there were "fabricated" felony charges brought against him. Instead, it is that Guzman intentionally inflicted emotional distress upon him by engaging in the aforementioned alleged misconduct in procuring the order quashing the

---

[1] Curry admitted that he was informed of the victim's death at the subsequent court date. R. 207 at p.7. Though not entirely clear, the "altered court file" and the "dual forged complaints" appear to refer to two versions of the felony complaint. R. 203 at pp. 37–38. Both have Guzman's signature "on behalf of" Jones and Judge Chiampas' signature on the "warrant issued" and "bail set." One has an additional field completed and signed by another judge on March 3, 2025, lists the arresting agency as CPD, and lists the Court Date/Time as March 10, 2020 at 1330. Curry has conceded several times there was no forgery. Moreover, the features Curry highlights do not plausibly suggest any forgery, but instead indicate one or more dated updates to the document. The "exculpatory video" appears to refer to a surveillance video from a Target parking lot which in Curry alleges he was not visible. R. 68 ¶ 64. There is no plausible basis to suggest the video was concealed nor that it was exculpatory. R. 207 at p. 13; *see also* R. 131-3 at pp. 4–5.

misdemeanor warrant and procuring the felony complaint and arrest warrant. As alleged, Guzman's conduct occurred on before February 10, 2020, and Curry discovered it on October 1, 2020.

Moreover, the case authority on which Curry relies offers no support. Curry cites *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), which concerned class certification in an unjust enrichment suit under the Illinois Consumer Fraud and Deceptive Practices Act and did not discuss statutes of limitations or equitable tolling. Curry also cites *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 961–62 (N.D. Ill. 2010), in which the court held that the statute of limitations for the IIED claim had not accrued until plaintiff's criminal conviction was vacated and the plaintiff was pardoned because it was "intertwined with the allegations of his malicious prosecution claim." *Id.* at 962. Not only is *Walden* inapplicable because Curry's malicious prosecution claim has been dismissed, but the Seventh Circuit has rejected the notion that IIED claims against law enforcement officers constitute a continuing wrong that extends beyond the date of the conduct alleged. *See Bridewell*, 730 F.3d at 678 (affirming dismissal based on the statute of limitations of an IIED claim against police officers for "arresting [plaintiff] and recommending her prosecution" because an IIED claim "in the course of arrest and prosecution accrues on the date of the arrest" and is not a "continuing wrong"); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (declining to consider prosecution a continuing tort and finding an IIED claim time-barred because it accrued at the indictment "even if the damages that [plaintiff] suffered may have continued throughout his trial"); *see also Friends-Smiley*

*v. City of Chicago*, No. 16-CV-5646, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016) ("[C]ourts in this district have consistently applied *Bridewell* broadly, holding that IIED claims of this sort accrue on the day of arrest, even where the distress alleged is 'intertwined' with a claim for malicious prosecution." (citing cases)). Curry's attempts to extend the statute of limitations are without support, and his IIED claim is time-barred.

## II. *Heck*

Even if Curry's claim was not barred by the statute of limitations, it would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a civil claim must be dismissed if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Although *Heck* was based on a § 1983 claim, it "applies to state law claims as well." *Fulton v. Bartik, 547 F. Supp. 3d 799, 822 (N.D. Ill. 2021)*; *see also Littrell v. Gulbrantson*, 2018 WL 2933664, at *7 (N.D. Ill. June 12, 2018) ("[P]laintiff's state law claims . . . are dismissed because Illinois has adopted the rule of *Heck* for claims arising under Illinois law."). In determining whether *Heck* applies, "a district court must analyze the relationship between the plaintiff's . . . claim and the charge on which he was convicted." *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006). If the plaintiff "makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (citing *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997)). If, however, "the district

8

court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *VanGilder*, 435 F.3d at 691 (quoting *Heck*, 512 U.S. at 487).

Curry argues that *Heck* is inapplicable because he does not allege that his guilty plea is invalid, he instead argues that Detective Guzman fabricated six felonies that are "factually and legally distinct" and thus severable from the guilty plea. R. 203 at pp. 2–3. However, Curry provides no plausible basis to support that the guilty plea is "factually and legally distinct." To the contrary, Curry pleaded guilty to one of the six charges all derived from the same facts alleging that Curry battered and strangled Jones in her vehicle and then absconded with it. The dismissal of some charges when striking a plea deal is to be expected, and does not indicate that the charges were fabricated nor that they were distinct from the ultimate plea in a *Heck* analysis. *See Patrick v. Fuelling*, No. 14 C 5414, 2021 WL 843426, at *6, *8 (N.D. Ill. Mar. 5, 2021) (finding an IIED claim against police officers for fabrication of evidence and suppression of exculpatory evidence resulting in an improper conviction *Heck*-barred after plaintiff pleaded guilty to one of eighteen charges); *Jordan v. Klamenrus*, No. 15 C 157, 2020 WL 4547879, at *4 (N.D. Ill. Aug. 6, 2020) (dismissing as *Heck*-barred an IIED claim against police officers for alleged fabrication of evidence and false imprisonment after plaintiff pleaded guilty to one amended charge out of eight). Indeed, Curry's allegations against Detective Guzman cannot be separated from his guilty plea—the allegations implicate the process of procuring the felony complaint

9

and arrest warrant that ultimately led to his conviction. The Seventh Circuit and courts within this district have found that IIED claims against police officers based on non-violent conduct leading to a conviction are barred by *Heck. See Parish v. City of Elkhart*, 614 F.3d 677, 684 (7th Cir. 2010) (reasoning an IIED claim against police officers based on all of the actions leading to a conviction, including alleged perjury and false and withheld evidence, would be barred by *Heck* for "attack[ing] the validity of the conviction"); *Fulton*, 547 F. Supp. 3d at 822 (explaining that an IIED claim against police officers "based on all of the actions leading to" a conviction was "*Heck*-barred because prevailing on the IIED claim would have necessarily implied the invalidity of the conviction"); *Renaud v. City of Chicago*, No. 12-CV-08758, 2013 WL 2242304, at *6 (N.D. Ill. May 21, 2013) ("Plaintiff alleges that [defendant] falsified police reports . . . and subsequently participated in the malicious prosecution of [p]laintiff. . . . Unless [p]laintiff gets his underlying guilty conviction and supervision decisions overturned, he cannot bring an IIED claim based on [defendant]'s conduct related to the criminal proceedings."); *Jordan*, 2020 WL 4547879 at *4 (dismissing under *Heck* an IIED claim against police officers for alleged fabrication of evidence and false imprisonment, but permitting the claim to move forward for punching plaintiff in the face). Permitting Curry's IIED claim to move forward would "cast a shadow over the conviction" in direct contravention of *Heck. See Hill v. Murphy*, 785 F.3d 242, 248 (7th Cir. 2015) (holding that "the implication of invalidity" of a criminal conviction "would be enough to establish the impropriety of the civil suit" under *Heck*).

10

And once again, the case authority on which Curry relies offers no support for his contention that the guilty plea is severable. In *Thompson v. Clark*, 596 U.S. 36 (2022), the Supreme Court held that a claim of malicious prosecution requires a showing that the underlying prosecution ended without a conviction, in part to prevent "civil suits from being improperly used as collateral attacks on criminal proceedings." *Id.* at 44 (citing *Heck* 512 U.S. at 484–84). The Court does not discuss severability. *Id.* Notwithstanding that Curry's claim is for IIED, rather than malicious prosecution, his prosecution *did* result in a conviction.

Furthermore, contrary to his stated argument, both Curry's complaint and brief are replete with allegations that Detective Guzman's actions invalidate his conviction. *See, e.g.*, R. 203 at p. 5 (arguing IIED based on "fraud," lying about "exculpatory" evidence, "felony tampering," and "coercing a plea"). Regardless of Curry's statement otherwise, if the allegations indicate a collateral attack on the criminal proceeding, they are barred by *Heck*. *Okoro*, 324 F.3d at 490 (citations omitted) ("It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). Because Curry's claim undermines his criminal conviction, it cannot proceed.

III.   IIED

Last, even if Curry's claim was not barred by the statute of limitations and *Heck*, Plaintiff has failed to plausibly allege that Defendant's conduct, taken as true, amounted to IIED. To establish an IIED claim under Illinois law, a plaintiff must

11

show "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier*, 207 Ill.2d at 203). To meet the extreme and outrageous standard, "the defendants' conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id.* "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct, nor does conduct 'characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.* at 566–67 (citing *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)).

Although Curry attempts to levy additional accusations against Guzman in his response brief, the basis of Curry's IIED claim is that Guzman (1) signed the felony complaint on Jones' behalf; (2) sought to quash the misdemeanor warrant without Jones' consent; (3) directly approached Judge Chiampas for a warrant instead of waiting for case assignment; (4) met with Judge Chiampas without a court reporter; and (5) presented certain materials to Judge Chiampas. Curry provides no support that these actions amount to IIED.[2] According to Guzman, "Plaintiff's allegations are commonplace occurrences in criminal prosecutions and just because he does not agree

---

[2] Curry cites *Fields v. Wharrie*, 740 F.3d 1137, 1140 (7th Cir. 2014). R. 203 at p. 5. As noted by Guzman, this citation does not exist. R. 207 at p. 14. The closest case is *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014), which does not have a page 1140 and pertains to prosecutorial immunity, not IIED.

with the process does not mean that Detective Guzman's actions are extreme and outrageous." R. 183 at p. 11. Guzman further argues "[t]here is nothing inappropriate, let alone 'conscious shocking' about a detective communicating with a prosecuting attorney to quash a misdemeanor warrant, then bringing their probable cause to a neutral judge in chambers to approve a felony warrant without a court reporter, and signing the felony complaint on behalf of the complaining victim." *Id.* at 10–11. The Court agrees. Guzman's conduct was consistent with his job as a detective and therefore cannot plausibly be considered extreme and outrageous. *See Cairel v. Alderden*, 821 F.3d 823, 836 (7th Cir. 2016) (finding that police officers' actions "did not depart from reasonable and ordinary police practices and thus cannot be said to be 'beyond all bounds of decency' as required for outrageous and extreme conduct under Illinois law" (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001))).

Signing the felony complaint on Jones' behalf is an accepted police practice and thus cannot plausibly be extreme and outrageous. So long as they indicate they are signing on behalf of the victim—as Guzman did here—detectives are permitted to sign criminal complaints. *See Haywood v. City of Chicago*, 378 F.3d 714, 719 (7th Cir. 2004*); see also Luster v. Turner*, No. 09 C 3755, 2011 WL 1002975, n.1 (N.D. Ill. Mar. 17, 2011) (noting that criminal complaints may be signed by the arresting officer on behalf of the complaining witness as long as the officer indicates that he or she is signing for the complainant).

Guzman seeking to quash a misdemeanor warrant without Jones' consent cannot plausibly be extreme and outrageous because victims do not need to consent

13

to criminal charges; only the prosecutor—not the detective—has discretion over which charges are brought. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). According to Curry, Jones was interviewed by prosecutors on February 9, 2020, who then approved a felony charge of aggravated domestic battery by strangulation that same day. R. 68 ¶¶14–15. The next day, Judge Laura Bertucci-Smith granted the prosecutor's motion to quash the misdemeanor warrant. *Id.* ¶¶ 17–19. There are no facts to support that Guzman did anything outside of his ordinary job responsibilities of presenting the prosecutors with evidence and moving forward with the charges they approved. Therefore, his conduct cannot cognizably be extreme and outrageous.

Approaching Judge Chiampas and presenting evidence in order to obtain a warrant is also a reasonable and ordinary part of a police officer's job and thus cannot plausibly be extreme and outrageous. As Judge Chiampas makes clear in her affidavit, she found there was probable cause to arrest Curry for aggravated domestic battery, it is not uncommon for her to approve warrants and felony complaints in locations other than her courtroom, and there is no requirement that a court reporter be present for the issuance of an arrest warrant. R. 160-5 ¶¶ 4–8.

14

Taking Curry's allegations as true, Guzman's conduct was consistent with his job as a detective and therefore there is no plausible basis for the Court to infer his conduct amounted to IIED.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion for judgment on the pleadings and dismisses Plaintiff's claim with prejudice.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 21, 2026

15